O'BRIEN, RESPONDENT, v. DRINKENBERG ET AL., APPELLANTS.

(No. 2,861.)

(Submitted September 12, 1910. Decided September 26, 1910.)

[111 Pac. 137.]

*Cities and Towns—Sidewalks—Injunction—Meetings of Council —Special or Adjourned—Powers of Council—Minutes—Municipal Contracts — Validity — Findings—Evidence—Insufficiency.*

Cities and Towns—Meetings of Council—Special—Burden of Proof.
    1. Plaintiff in an injunction suit to restrain the payment of municipal funds for work done in repairing sidewalks, one ground of whose complaint was that though the meeting of the council at which the walk was ordered replaced was a special one, it was held without any notice, proclamation or message of the mayor required to be given by section 3250, Revised Codes, had the burden of proving that the meeting was a special one.

District Courts—Findings—Scope.
    2. A court may not go outside the issues and make findings upon questions not in dispute.

Cities and Towns—Sidewalks—Powers of Council—Discretion.
    3. In the absence of an allegation that the city council, in ordering a wooden sidewalk to be replaced by a concrete walk, abused its discretion or was guilty of fraud, a finding that such walk did not need

replacing was immaterial, since the council's action in the premises was in the exercise of a legislative function, and subject to judicial review only for fraud or abuse of discretion.

Same—Town Council—Special Meeting—Call for—Evidence—Insufficiency.
4. Where the plaintiff, in order to substantiate his claim that a mayor in calling a special meeting of the city council had not issued a proper call as required by subdivision 9 of section 3250, Revised Codes, made no attempt to introduce and have read the call, but simply introduced the minutes of such meeting, which tended to contradict the allegation of the complaint in that regard, a finding of the court in favor of plaintiff on that issue was not sustained by the evidence.

Same—Minutes of Council—Manner of Keeping.
5. The law does not contemplate that the proceedings of the council of a municipality shall be kept with the formality and nicety of the minutes of a court of record.

Same—Sidewalks—Ordinances—Findings.
6. The burden of proving the allegation that there was no ordinance authorizing the town council to condemn a board walk and order its replacement by a concrete one was ·not sustained by plaintiff in producing testimony of a witness who stated that he had examined the book of ordinances of the town and that there was no resolution or ordinance to be found therein fixing the grade of the town, and by that of another to the effect that there was a sidewalk ordinance, but that he was not "well enough versed in the ordinances to know."

Same—Contracts—Bids—Evidence—Findings.
7. Evidence *held* insufficient to support a finding of the court that contracts aggregating in amount the sum of $461 for the construction of cement sidewalks had been let by the town council without receiving bids for such work.

Same—Contracts—Validity—Attack.
8. To successfully attack the letting of a contract for a municipal improvement, plaintiff must show that it was not let to the lowest responsible bidder, that there was not any opportunity afforded for competitive bidding, or that there was collusion or bad faith on the part of the council, or such gross mistake as to preclude the exercise of sound judgment.

*Appeal from District Court, Ravalli County; Henry L. Myers, Judge.*

Action by W. P. O'Brien against F. H. Drinkenberg, as mayor, and others, as aldermen, of the town of Hamilton. From a judgment for plaintiff and from an order denying them a new trial, defendants appeal. Reversed and remanded.

*Mr. C. S. Wagner* submitted a brief, and argued the cause orally in behalf of Appellants.

In the absence of affirmative proof to the contrary, it will be presumed that the meetings and adjournments of the council are regular. (*Duniway* v. *City of Portland,* 47 Or. 103, 81 Pac.

945; *Beck et al.* v. *Holland et al.,* 29 Mont. 234, 74 Pac. 410; 28 Cyc. 328.)

Neither section 3253, Revised Codes of 1907, which prescribe the duties of the clerk, nor section 3263 of the same Code, which provides for the recording of the ayes and noes upon certain propositions, make any requirements, as a condition prerequisite to the validity of the proceedings of a council, that such proceedings must actually be recorded. This being true, the duties of the clerk should be held, in this state, to be directory rather than mandatory. (*Marth* v. *City of Kingfisher,* 22 Okl. 602, 98 Pac. 436; *Belknap* v. *Miller,* 52 Ill. App. 617; *Striker* v. *Kelly,* 7 Hill (N. Y.), 9; *State* v. *Minneapolis R. Co.,* 39 Minn. 219, 39 N. W. 153; *Barber Asphalt Paving Co.* v. *Hunt,* 100 Mo. 22, 18 Am. St. Rep. 530, 13 S. W. 98, 8 L. R. A. 110; *City of Seattle* v. *Doran,* 5 Wash. 482, 32 Pac. 105, 1002; *Marion Water Co.* v. *Marion,* 121 Iowa, 306, 96 N. W. 883; *State* v. *Vail,* 53 Iowa, 550, 5 N. W. 709; *Lexington* v. *Headly,* 5 Bush (Ky.), 508; *Downing* v. *City of Miltonvale,* 36 Kan. 740, 14 Pac. 281.)

The record discloses that when the motion was put by the chair, all members voted "Aye." The vote was unanimous. There were no "Noes." The roll-call discloses who was present at the meeting. All present voted for the measure. It was not necessary, under these circumstances, to name the persons who voted for it. The minutes are sufficient to show that a roll-call was taken, and that upon such vote the motion to replace the wooden sidewalk with a cement one was carried unanimously, all members voting "Aye." (*Goodyear Rubber Co.* v. *City of Eureka,* 135 Cal. 613, 67 Pac. 1043; *Marion Water Co.* v. *Marion,* 121 Iowa, 306, 96 N. W. 883; 28 Cyc. 334, 344.)

In behalf of Respondent, there was a brief by *Messrs. R. A. O'Hara, J. H. Sappiro,* and *Messrs. Crutchfield & Taylor. Mr. Thomas J. Edwards* argued the cause orally.

The power to establish grades for streets is one of these delegated powers, and there is only one way that the council can act, and that is by by-law, ordinance or resolution. (*Smith* v. *Duncan,* 77 Ind. 92; *Thompson* v. *Boonville,* 61 Mo. 282; *Zable* v.

*Orphans' Home,* 92 Ky. 89, 17 S. W. 212, 13 L. R. A. 668; *Birdsall* v. *Clark,* 73 N. Y. 73, 29 Am. Rep. 105; *McCrowell* v. *Bristol,* 89 Va. 652, 16 S. E. 867, 20 L. R. A. 653; *Chicago & N. P. R. Co.* v. *City of Chicago,* 174 Ill. 439, 51 N. E. 596; *Shannon* v. *Village of Hinsdale,* 180 Ill. 202, 54 N. E. 181; *State ex rel. Shannon* v. *Judges,* 51 Minn. 539, 53 N. W. 800, 55 N. W. 122.)

Any ordinance directing the construction of sidewalks on an official grade, when in fact no official grade has been established by ordinance, is void. (*Brewster* v. *City of Peru,* 180 Ill. 124, 54 N. E. 233; *Craig* v. *People,* 193 Ill. 199, 61 N. E. 1072.)

The provision of section 3263, Revised Codes, that "the yeas and nays must be called and recorded on the final passage of any by-law, ordinance, resolution or the making of any contract," must be followed by town councils. It is a mandatory enactment. (*Pickton* v. *City of Fargo,* 10 N. D. 469, 88 N. W. 90; *Tracey* v. *People,* 6 Colo. 151; *Town of Olin* v. *Myers,* 55 Iowa, 209, 7 N. W. 509; *Sullivan* v. *Leadville,* 11 Colo. 483, 18 Pac. 736; 1 Dillon's Municipal Corporations, p. 367; *Morrison* v. *City of Lawrence,* 98 Mass. 219; *Steckert* v. *City of East Saginaw,* 22 Mich. 104; *Cutler* v. *Town of Russellville,* 40 Ark. 105; *Rich* v. *City of Chicago,* 59 Ill. 286; *O'Neil* v. *Tyler,* 3 N. D. 47, 53 N. W. 434.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is a suit by a resident taxpayer of the town of Hamilton to secure an injunction restraining the mayor and town council from paying out of the town treasury certain funds for work done in repairing sidewalks. Plaintiff recovered judgment, and defendants appealed from the judgment and from an order denying them a new trial.

The amended complaint alleges that the town council, at a special meeting which was held on September 20, 1909, without authority, made an order condemning the board sidewalks within certain designated boundaries (the fire limits), and directing the owners of abutting property to replace the same with sidewalks of concrete. It is then alleged that the sidewalks so condemned were in good condition, and sufficient for the purposes for which used. It is further alleged that at a special meeting of the coun-

cil held on October 25, 1909—and which meeting, it is alleged, was held "without authority and without a proper message from the defendant F. H. Drinkenberg as mayor of said town"—it was ordered that the board walk along lots 7 and 8, in block 27 (the property of R. A. O'Hara), be replaced by a concrete walk, and that, though the work to be done was one entire piece of work, the town council let two contracts therefor to avoid and evade the provisions of section 3278, Revised Codes of Montana; that these contracts were let without notice and without bids therefor having been received; that the contractors proceeded to do the work, and, unless enjoined, the defendant will issue warrants of the town to the contractors and pay out funds of the town for the work so done. The foregoing brief *résumé* of the complaint is sufficient to indicate the theory upon which plaintiff proceeded and to illustrate the views which we express.

The answer of the defendants contains a general denial of the foregoing allegations of the complaint, and then sets forth somewhat in detail the proceedings taken to condemn the walks and let the contracts for replacing them. It alleges that the contracts were let for sums aggregating about $500. The new matter pleaded in the answer was denied in a reply. The cause was tried to the court sitting without a jury. When the plaintiff rested his case, the defendants declined to introduce any evidence, and the cause was submitted upon the case made by the plaintiff.

The trial court made numerous findings of fact, all in favor of plaintiff's contention, drew conclusions of law therefrom, and rendered and entered a judgment or decree which contains a permanent injunction restraining the defendants from paying, or ordering the payment of, any money from the town treasury to Kaiser or Jermain, the contractors mentioned above, for or on account of the work done in replacing the sidewalk along lots 7 and 8, block 27; and they are further enjoined from tearing up or replacing, or taking any further proceedings with reference to, any of the other sidewalks condemned at the meeting held on September 20, 1909, by virtue of the action taken at that meeting.

All the evidence adduced at the trial is preserved and presented here in a bill of exceptions, and it is contended by appellants that the evidence fails to sustain the findings made by the trial court.

1. The first material finding is that the meeting of the town council held on September 20, 1909, was not a regular nor an adjourned meeting of the council, but was a special meeting, and was held without any notice, proclamation or message from the mayor, and without any authority whatever. To prove the allegation of the complaint that the meeting of September 20, 1909, was a special meeting of the board, counsel for plaintiff offered in evidence the last entry in the minutes of the council meeting of September 8, 1909, which was the last meeting prior to the one held on September 20. That entry reads, "There being no further business, meeting adjourned," and also introduced the minutes of the meeting of September 20, which open with this entry: "Town council met in adjourned session with the following members present," etc. The other entries in the minutes of the meeting of September 8 were not before the trial court and are not in this record, and it is impossible to say whether that meeting was a regular or special one. The entry from the minutes of that meeting, introduced in evidence, is not even inconsistent with the idea that, before adjournment, the council may have provided for an adjourned session for September 20. In fact, there is not anything in the record to show that the minutes of the meeting of September 8 were ever approved or adopted by the council, or signed by the mayor. (Revised Codes, sec. 3251.) The minutes of the meeting of September 20, recite that it was an adjourned session of the council. They show that all members of the council were present. The city clerk, who was a witness for plaintiff, testified that it was supposed to be an adjourned session, while the general nature of the business transacted tends to indicate that such was the character of the meeting. An issue having been made in the pleadings as to whether the meeting of September 20 was a special meeting of the council, and plaintiff, having assumed the affirmative of the issue, had

to sustain the burden of proof, and, upon the record here presented, it appears to us that he failed altogether.

2. The trial court next finds that the motion to condemn the sidewalks in question was carried by a *viva voce* vote. The only evidence in the record touching this matter is found in the minutes of the meeting, which read: "On motion of Hayes, seconded by Lagerquist, the council ordered condemned all board walks on both sides of Main street from Front to Third, also one block north and one block south on both sides of Second street, and owners were to rebuild same in concrete."

Section 3263 of the Revised Codes provides: "The ayes and noes must be called and recorded on the final passage of any ordinance, by-law, or resolution, or making any contract. * * * " Assuming for the purposes of this case, but without deciding, that the minutes should record the vote upon a motion of the character of the one mentioned in the minutes above, it is apparent at once that the ayes and noes were not recorded if taken; but the evidence offered does not prove that the vote was taken *viva voce*. However, all this is really beside the question, for there is not any allegation in the complaint that the vote was taken *viva voce,* and no complaint is made of any irregularity in the vote so far as the manner in which it was taken or recorded is concerned. There was not any issue made by the pleadings, and it is elementary that the court cannot go outside the issues made and make findings upon questions not in dispute. (*Dutro* v. *Kennedy,* 9 Mont. 101, 22 Pac. 763; *Harris* v. *Lloyd,* 11 Mont. 390, 28 Am. St. Rep. 475, 28 Pac. 736.)

3. The trial court found that at the time the sidewalk along lots 7 and 8, block 27, was condemned, it was in good condition, sufficient for the purpose for which used, was not dangerous, and did not need repair or replacement. There is not any allegation in the complaint that in condemning this sidewalk and ordering it replaced by a concrete walk, the town council abused its discretion or was guilty of fraud, and, in the absence of such allegations, the finding made is immaterial. The power sought to be exercised by the town council is specifically conferred by subdivision 65, section 3259, Revised Codes. In condemning this

sidewalk and ordering a new one in its stead, the town council was exercising a legislative function, and, except for fraud or abuse of discretion, its action is not subject to judicial review. In principle the decision of this court in *Beck* v. *Holland,* 29 Mont. 234, 74 Pac. 410, is directly in point, and sustains this view of the law.

In *Jones* v. *Chicago,* 213 Ill. 92, 72 N. E. 798, the supreme court of Illinois said: "The municipal authorities are the best judges of the necessity for the improvement of public streets and alleys. Merely because witnesses may think an improvement is unnecessary will not justify a court in substituting its judgment for that of the municipal authorities."

The evidence is not very definite or certain as to the condition of the board walk which was replaced. It does not appear how long it had been in use; but in *Dumesnil* v. *Louisville Artificial Stone Co.,* 109 Ky. 1, 58 S. W. 371, the supreme court of Kentucky, considering the same question, said: "While the proof is conflicting as to the condition of the old sidewalk when it was torn up, and the preponderance of the evidence would show that it was not, at least, in a bad condition, still it had been down for twenty-two years, and there is nothing in the proof to establish such a state of case as to justify a court of equity in interfering with the decision of the general council in a matter which the law has confided to its jurisdiction."

4. Again, the trial court found that the meeting of October 25 was a special meeting of the council, not called as provided by subdivision 9, section 3250, Revised Codes, in that there was not "any proper or sufficient call, message or proclamation therefor or notice thereof from the said mayor, as to the business thereat attempted to be transacted; and without any notice thereof to the plaintiff or the said R. A. O'Hara." The statute above referred to reads as follows: "Sec. 3250. The mayor is the chief executive officer of the city or town, and has power: * * * (9) To call special meetings of the council, and when so called he must state by message the object of the meeting, and the business of the meeting must be restricted to the object

stated." It will be observed that a formal proclamation from the mayor is not necessary to convene the council in special session. Neither does the statute provide that notice shall be given. It certainly does not require that notice shall be given to every taxpayer, nor does it specify the particular form of the call. The law does require that the mayor shall deliver to the council a message stating the object of the meeting. The only evidence in the record bearing upon the question now before us is found in the minutes of the meeting of October 25, which read as follows:

"Hamilton, Montana, October 25, 1909.

"Town Council met in special session pursuant to proclamation of the mayor at 7:30 P. M. at the regular place of meeting in the town hall. The proclamation of the mayor calling the meeting was read, and it appearing thereupon that the meeting was called for the purpose of taking appropriate action relative to the construction of cement sidewalks within the fire limits of said town, to hear report of the street and alley committee of the council and of the street commissioner relative to the service of notice to build such sidewalks, and to ascertain whether the previous orders of the street and alley committee were complied with, and to do and perform such other business as might lawfully come before the council," etc.

There was not any attempt made by the plaintiff to have produced and read the message or proclamation of the mayor, and, as the plaintiff had the burden of proof, he wholly failed to sustain the allegation of his complaint, assuming that his pleading is sufficient. The evidence which plaintiff did introduce, *viz.*, the minute entry above, tends strongly to contradict the allegation of the complaint and the finding of the court. It furnishes, at least, some evidence that a message from the mayor was delivered to the council, and shows generally the contents of such message. The law never contemplated that the proceedings of a town or village council should be kept with all the formality and legal nicety of the minutes of a court of record. (28 Cyc. 344.) The evidence wholly fails to sustain this finding of the trial court.

5. The court also found that the council ordered the O'Hara walk replaced, and let the contracts for the work upon *viva voce* votes and without a roll-call and record of the aye and no vote; but neither of these findings can be sustained. There is not any allegation in the complaint upon the subject. There was not any issue joined, and these findings must be disregarded as beyond the issues made. What we have said in paragraph 2 of this opinion is applicable here.

6. The court made finding No. 19, as follows: "(19) That there is not shown to exist or to have ever existed any ordinance or by-law of said town whereby the mayor and town council of said town, even when duly regularly convened, might or could authoritatively do any of the things, or are or were empowered to do any of the things, by defendants assumed and attempted to be done, as aforesaid, at said meeting of September 20, 1909, or at said meeting of October 25, 1909." This finding indicates that the trial court in this instance imposed the burden of proof upon defendants, whereas the burden was upon plaintiff, who alleged that there was not any ordinance authorizing the council to do the things which were ordered done, to show that fact. In support of the issue made, plaintiff called one Sapiro as a witness, who testified that he had examined the book of ordinances of the town, and then said: "There is no resolution or ordinance, recorded in that book, fixing the grade for the town of Hamilton." Plaintiff also called as his witness the town clerk, and the following evidence was adduced: "Q. Have you in your possession, as town clerk, any specifications for the construction of cement sidewalks, approved and adopted by the town of Hamilton? A. Well, we have. There is a sidewalk ordinance. I am not well enough versed in the ordinance to know." We think this evidence—which is all there is upon the subject—fails to support finding No. 19, and, furthermore, that the finding in the negative form in which it is drawn is immaterial to any issue made by the pleadings.

7. The court also found that there is not any by-law, ordinance or other authority by which the town can compel the abutting property owner to reimburse it for the expense incurred in mak-

ing the improvement. As to whether there is any ordinance upon the subject, the record is silent, except as indicated in the paragraph above. The authority invoked by the town is found in subdivision 65 of section 3259, above.

8. The court also found that at the meeting of October 25 the council let two separate contracts for one entire piece of work: that the aggregate amount of the two contracts was $461; and that the contracts were let "without notice thereof and without having advertised for bids therefor, and without receiving or having any bids therefor."

Plaintiff called the town clerk as a witness, who testified that he had never had in his possession any bid from either Kaiser or Jermain, the contractors who did the work, for the work which was done in replacing the sidewalk along the O'Hara property; but the clerk also testified that he was not present at the meeting of the council on October 25, while the minutes of that meeting, which were approved by the council, after referring to the walks now under consideration, recite that: "Bids for the construction of said sidewalks were then called for, and T. P. Kaiser was awarded the contract for constructing said sidewalk for a distance of sixty feet along Main street in front of said lots, and at the junction of Second and Main streets, and for a distance of twenty feet along Second street immediately north of Main street, at twenty cents a square foot, measuring from inner edge or for the total sum of $216. Mr. Jermain was awarded the contract for the construction of sidewalk Second street abutting lot 7 block 27, except twenty feet contiguous to Main street at the rate of twenty cents a square foot measuring from inner edge to bottom of curb or $245 for the entire work." This is all the evidence in the record upon this subject, and we think it fails altogether to support the finding that there were not any bids received.

There is not any charge in the complaint that the work was not let to the lowest responsible bidders, or that there was any bad faith on the part of the council or any collusion in letting the bids, or that the work could have been done for any less sum than that comprehended in the two contracts; but it is contended

that the council was without authority to let a contract for work costing more than $250, without notice and competitive bids, and that the council attempted to avoid this by splitting up the one entire piece of work and letting two contracts therefor, neither of which entailed an outlay of $250, but both of which called for an expenditure of more than that amount. So far as applicable here, section 3278, Revised Codes, provides: "All contracts for work, or for supplies, or material, for which must be paid a sum exceeding two hundred and fifty (250) dollars, must be let to the lowest responsible bidder, under such regulations as the council may prescribe.  *  *  *  " It will be observed that the statute does not require notice to be given, and in *State ex rel. Lambert* v. *Coad*, 23 Mont. 131, 57 Pac. 1092, this court said: "It is the general rule that, when the authorities of a municipality are required by statute to let contracts to the lowest bidder, a contract not so awarded is illegal. (Tiedeman on Municipal Corporations, sec. 172.) Bids need not be called for unless the statute requires it; but, if notice, advertising and similar preliminaries are required, a contract entered into without attention to these preliminaries will be held invalid."

We have set forth above all the evidence upon this subject. We have not any means of knowing whether there were or were not other bidders than Kaiser and Jermain present at the meeting of October 25, whether there were or were not other bids received by the council, or whether or not an equal opportunity was or was not given other contractors to bid upon the work. In *State ex rel. Lambert* v. *Coad*, above, this court quoted with approval from *Dement* v. *Rokker*, 126 Ill. 174, 19 N. E. 33, the following: "Letting by contract to 'the lowest responsible bidder' necessarily implies equal opportunity to, and freedom in, all whose interests or inclinations might thus impel them to compete at the bidding. No one may be compelled to bid at such a letting, but there must be entire fairness and freedom in competition.  *  *  *  The manifest purpose in requiring the contract to be let to 'the lowest responsible bidder' is to protect the state against imposition and extortion."

In view of the evidence set forth above, we are unable to sustain the finding that these contracts were let without any bids having been received by the council.

It is entirely immaterial that the council let two contracts. The work might have been let in one contract, and, if it had been done, to successfully attack such proceeding, plaintiff would have to show that the contract was not let to the lowest responsible bidder, that there was not any opportunity afforded for competitive bidding, or that there was collusion or bad faith on the part of the council, or such gross mistake as to preclude the exercise of sound judgment, and in this he failed. The evidence does not show what, if any, regulations the council had prescribed for receiving bids or letting contracts.

The other findings are not sufficiently material to warrant consideration. At the close of plaintiff's case, the trial court should have found that plaintiff had not introduced evidence sufficient to show that he was entitled to any relief.

The judgment and order of the district court are reversed, and the cause is remanded with directions that the complaint be dismissed and judgment entered in favor of defendants for their costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.